IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANCIS PEEBLES,<br><br>Defendant. | 8:18CR336<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on defendant Francis Peebles's ("Peebles") Emergency Motion for Compassionate Release (Filing No. 68) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on his fear of contracting COVID-19. Peebles asks the Court to modify his "sentence to time served and release him to begin his time on supervised release." For the reasons below, his motion is denied.

## I.   BACKGROUND

On May 2, 2019, Peebles pleaded guilty to conspiring to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1) and 846. Peebles also forfeited his interest in $6,944.00 in United States currency and ten firearms seized from Peebles's residence at the time of his arrest on November 16, 2018. *See* 21 U.S.C. § 853 (criminal forfeiture).

In accordance with Peebles's written plea agreement, *see* Fed. R. Crim. P. 11(c)(1)(C), the Court sentenced him on July 26, 2020, to the statutory mandatory minimum of 120 months in prison and five years of supervised release. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (requiring a prison sentence of not "less than 10 years or more than life" and "a term of supervised release of at least 5 years" for that quantity of methamphetamine mixture). Peebles did not appeal his conviction and sentence.

On August 6, 2020, just a little more than a year after he was sentenced, Peebles moved for "compassionate release" (Filing No. 66) under § 3582(c)(1)(A)(i). The Court denied (Filing No. 67) his request without prejudice for failing to show he met the statutory requirements for judicial review. *See id.* (authorizing an inmate to move for a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his] facility, whichever is earlier").

On October 5, 2020, Peebles renewed his request for "compassionate release" (Filing No. 68), explaining more than thirty days had passed since Peebles's warden denied his request for sentencing relief. The government does not deny Peebles has met § 3582(c)(1)(A)'s requirements for review on the merits.

## II.   DISCUSSION
### A.   Ten-Year Mandatory Minimum

As noted above, Peebles is serving a ten-year mandatory-minimum sentence. In his motion, he states he has completed "a little over 1 ½ years" at FCI Oxford in Oxford, Wisconsin. He is currently housed at a camp with 68 inmates "separated into four different housing wings." With credit for time served and other credits, his projected release date is May 25, 2027. He asks the Court to reduce his sentence to time served.

Section 3582(c)(1)(A)(i) authorizes Peebles to move the Court to "reduce [his] term of imprisonment" for "extraordinary and compelling reasons" but says nothing about what impact his mandatory minimum has on the Court's authority to grant that relief. District courts usually "lack the authority to reduce sentences below congressionally-mandated statutory minimums." *United States v. Watts*, 553 F.3d 603, 604 (8th Cir. 2009) (per curiam) (citing *Kimbrough v. United States*, 552 U.S. 85, 103-04 (2007)); *accord United States v. Forman*, 553 F.3d 585, 588 (7th Cir. 2009) (per curiam) ("[A]part from two exceptions that do not come into play here—18 U.S.C. § 3553(e) and (f)—a district court can never impose a sentence below the statutory minimum."), *overruled on other grounds*

by *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015); *United States v. Jauregui*, No. 10-CR-0272(4) PJS, 2015 WL 4744463, at *1 (D. Minn. Aug. 11, 2015), *aff'd*, 637 F. App'x 244 (8th Cir. 2016) ("Statutory mandatory minimums are, by definition, mandatory; courts do not have authority to sentence below them (with a couple of narrow exceptions).") (footnote omitted). *But see United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *12 (W.D. Pa. May 29, 2020) (opining that a judge deciding a compassionate-release motion can reduce a sentence below the mandatory minimum, "even if the original sentencing judge could not").

The Court asked the parties to brief the issue. Neither has provided—and the Court has not found—any binding (or particularly persuasive) authority directly on point. The government summarily asserts the Court must deny Peebles's request because "there is no provision in 18 U.S.C. § 3582(c)(1)(A) that permits courts to disregard already established law relating to mandatory minimums." *See United States v. Payton*, 636 F.3d 1027, 1049 (8th Cir. 2011).

Peebles, in contrast, simply contends the Court's concerns about the mandatory minimum are "unfounded." As Peebles reads it, the absence of any express limitation on the Court's authority to reduce a mandatory minimum in § 3582(c)(1)(A) itself means there is no limitation at all. Peebles asserts, "Section 3582(c)(1)(A)(i) authorizes the court to reduce any sentence for extraordinary and compelling reasons, regardless of whether that sentence is a not-yet-completed mandatory minimum sentence."

Peebles argues *Watts* is no barrier to a sentence reduction because "the Eighth Circuit's unqualified statement about a district court's authority to reduce a mandatory minimum sentence was not necessary to its holding in *Watts* and could be considered *dicta*." He further argues the Eighth Circuit "quickly contradicted itself by citing" § 3553(e), under "which district courts *can* reduce a sentence below the mandatory minimum." Peebles ostensibly sees no difference between the express exceptions in § 3553(e) and (f) and the exception he draws from silence in § 3582(c)(1)(A)(i). For

3

Peebles, the lack of clear precedent on this issue is simply a function of the recent change in the law that now permits an inmate to seek a sentence reduction on their own.

Peebles may be right that the Court's concerns about the impact of a mandatory minimum on its authority to grant relief under § 3582(c)(1)(A)(i) are "unfounded." He may also be right that a "majority of courts" support his expansive "view of the court's power." It is not difficult to find cases in which courts have reduced a sentence below a mandatory minimum under § 3582(c)(1)(A)(i). But very few analyze this precise issue, and none is so thorough and sagacious as to readily "ease" the Court's doubts, despite Peebles's assurances to the contrary.

Put simply, Peebles does not satisfactorily address what would prevent his broad, no-limit interpretation of § 3582(c)(1)(A) from substantially undermining Congress's decision to impose mandatory minimums for certain crimes. He fails to explain how a judge with extremely limited authority to avoid a mandatory minimum at sentencing has almost no constraints on their discretion even a short time later upon receiving a motion to modify under § 3582(c)(1)(A)(i).

Taken to the extreme, Peebles's no-limit interpretation of § 3582(c)(1)(A)(i) would allow a judge to impose a mandatory minimum at sentencing under protest, then—based on a disagreement with Congress—reduce the sentence (even to time served) roughly thirty days later on the defendant's motion. That is hard to reconcile with the purposes and provisions of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. §§ 991-998. *See Hughes v. United States*, 584 U.S. ___, ___, 138 S. Ct. 1765, 1776 (2018) ("The Act aims to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." (quoting *Freeman v. United States*, 564 U.S. 522, 533 (2011))); *United States v. Cammisano*, 917 F.2d 1057, 1064 (8th Cir. 1990) ("The Act was intended to do away with the uncertainties and the disparities in sentencing which resulted from earlier systems, where judges had

4

broad discretion in imposing the sentence." (quoting *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir. 1989) (per curiam))).

To be sure, the sentencing judge must find "extraordinary and compelling reasons warrant such a reduction," but that—as evidenced by the myriad opinions issued under § 3582(c)(1)(A)(i) of late—may not present much of a barrier. Left largely undefined at this point, *see* 28 U.S.C. § 994(t); *United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437, at *2-3 (D. Neb. May 26, 2020) (discussing U.S.S.G. § 1B1.13), the phrase "extraordinary and compelling" leaves a lot to the eye of the beholder.

But the Court need not enter the thicket and resolve these thorny issues in this case. Even if the Court does have authority to reduce Peebles's sentence below his ten-year mandatory minimum under § 3582(c)(1)(A)(i), it would not use it on the facts presented.

### B.     No Extraordinary and Compelling Reasons for Relief

In reviewing a request for a sentence reduction under § 3582(c)(1)(A)(i), the Court must consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offenses of conviction; the defendant's history and characteristics; and the need for the sentence to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment for the offense. A defendant's sentence should also deter criminal conduct, protect the public from future crime by the defendant, and promote rehabilitation. *Id.*

The Court also considers whether the defendant presents "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2), and must ensure any relief is "consistent with applicable policy statements issued by the [United States] Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A). The first application note to § 1B1.13[1] lists four general categories of qualifying circumstances:

---

[1]This policy statement predates the First Step Act, so it does not control the analysis here, but the Court still finds it helpful. *See Jenkins*, 2020 WL 2814437, at *3.

(1) the defendant's terminal illness or other serious medical condition; (2) the defendant's advanced age and deteriorating health; (3) dire family circumstances; and (4) other "extraordinary and compelling" reasons as determined by the BOP Director. U.S.S.G. § 1B1.13 cmt. n.1. The defendant's rehabilitation may be relevant but "is not, by itself, an extraordinary and compelling reason for purposes of [§ 1B1.13]." *Id.* § 1B1.13 cmt. n.3; *see also United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (unpublished) (citing 28 U.S.C. § 994(t)).

In support of his motion, Peebles notes his Body Mass Index results in "an official diagnosis of obesity," which puts him at a higher risk of serious illness or death from COVID-19. He also states he is at greater risk because has hyperlipidemia and is a former smoker, having smoked for fifteen years. Peebles fears contracting COVID-19 could be fatal.

Peebles reports the risk of infection has risen dramatically at FCI Oxford over the past few months. According to Peebles, FCI Oxford has "had over 600 cases in the facility between inmates and staff, most of them coming between September and November." From September to October, "65% of inmates at FCI Oxford became infected." Because of that increase, Peebles is unable to follow Centers for Disease Control and Prevention guidance to protect himself, particularly given the lockdown and other conditions at the camp where he lives.

Peebles acknowledges "the worst seems to have passed" but states that as of December 8, 2020, the facility was reporting 100 inmates and 10 staff members are positive for COVID-19, some of whom are at Peebles's camp. Though those numbers have more recently dropped to 56 inmates and 5 staff, Peebles maintains the spike in cases shows "the efforts to contain the virus at FCI Oxford have been unsuccessful."

6

Aside from his COVID-19 concerns, Peebles has done well in prison. He works as a boiler house technician, completed a drug-abuse education course in March 2020, and has not had any disciplinary incidents while in custody.

Peebles also aptly notes that his crime was nonviolent and his first felony conviction. He attributes the limited criminal history he does have to his drug addiction, which he has begun to address while in prison. As Peebles sees it, "[h]e has paid a substantial debt to society and poses no danger to the community that cannot be addressed through supervision." If released, Peebles proposes to live with his father in a small lake cabin in Missouri.

Not surprisingly, the government sees Peebles's case a little differently. Noting the quantity of drugs involved in Peebles's crime and the large number of guns found nearby, the government argues the community is much safer with Peebles in jail. The government acknowledges Peebles's health concerns but maintains they are not extraordinary.

With respect to the conditions at FCI Oxford, the government contends Peebles's "motion does not address the measures that BOP is undertaking to prevent any spread, including suspension of social visitation, internal inmate movements, legal visits, official staff travel, training, access by volunteers and many contractors; extensive screening of staff and inmates (including screening of all new inmates); quarantine; and modified operations to maximize social distancing." In the government's view, Peebles is likely as safe from COVID-19 in prison as he would be on the outside.

The Court has carefully reviewed Peebles's request for a sentence reduction. While the Court does not share the government's unbridled optimism about the rosy picture at FCI Oxford, the Court concludes Peebles has not demonstrated "extraordinary and compelling reasons" to modify his sentence. Given Peebles's age and overall good health, the Court finds his documented medical conditions do not show enough of an increased

risk from COVID-19 to warrant sentencing relief, even with the recent spikes in positivity rates at the FCI Oxford campus over the last few months.

The Court commends Peebles's efforts to address his struggle with addiction while in prison and fully credits his good behavior to this point. But leaving aside the complex issues related to Peebles's statutory mandatory minimum, the Court notes he has only served about a third of the ten-year sentence he negotiated with the government. COVID-19 certainly changes the sentencing equation, but it does not automatically warrant relief. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Under the circumstances of this case, the balance of the relevant § 3553(a) factors weighs against reducing Peebles's sentence at this time.

Based on the foregoing, Peebles's Emergency Motion for Compassionate Release (Filing No. 68) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is denied.

IT IS SO ORDERED.

Dated this 21st day of December 2020.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge